## P. J. SEXTON v. THE MARQUIS ALBERTI, etc., et al.

1. MARRIED WOMEN. *Contract. Mechanic's lien.* A mechanic under written contract with husband and wife erected a building on land, the wife's general estate, and filed his bill to enforce his lien. *Held,* her contract for building the house was void, and her promise to pay for it equally a nullity, and that no lien could arise from these acts by which her property could be in any way affected. Contracts which a party has no power to make, cannot be the basis of legal obligation. The liability of the land to the lien would seem to be met by the the fact, that she could only dispose of it by conveyance as required by law. While a lien is not a right to land, nor interest in land, but a charge fixed upon it by law or contract, still it would seem an incongruity to hold that the wife could indirectly contract for a result, by which her land might be conveyed or disposed of against her will when she could not have done so directly except under prescribed forms.

2. JUDICIAL SALE. *Effect of setting aside decree of sale. Rights of complainant and strangers as purchasers.* A complainant in a suit in chancery purchases at a sale ordered by the court under a decree obtained by himself, and sale confirmed. After this defendants were permitted to come in and make defense, which was successful. *Held* that complainant purchaser could not retain the title thus obtained under section 4383 of the Code. He buys under a proceeding to which he is a party, and knows he may have his proceeding contested, set aside and annulled. The result would be different as to a stranger to the proceedings.

---

FROM SUMNER.

---

Appeal from the Chancery Court at Gallatin. B. J. TARVER, Ch.

HEAD BROS. and J. J. TURNER for complainants.

J. J. VERTREES for defendants.

FREEMAN, J., delivered the opinion of the court.

The original bill was filed August, 1871, to enforce a mechanics lien on a tract of land in Sumner county, on which complainant had contracted with the defendant, Marquis, and his wife, Ella, to build a house, according to certain specifications annexed to and part of a contract made between the parties. This contract is of date November, 1870, and is signed by the respondents and by complainant.

It is substantially this. It recites the fact that Sexton had agreed to and bound himself to build the house according to specifications made part of the contract, for which the sum of $4,566 was to be paid, as therein specified. This was Sexton's undertaking.

On the part of the Marquis and his wife, Ella, it is agreed, and they promise to pay Sexton, on the certificate of the architect, the sum specified, to be paid by installments equal to seventy-five per cent of the work done. The remainder when completed.

The substance of this is, that Sexton agrees to build a house on land, owned to a certain extent, by the wife. What that precise interest was we need not at present determine.

The husband and wife on their part, give a written promise to pay for the house. The first question presented is, does this contract bind the wife; and then does it fix a mechanic's lien on her interest in the land?

The general principle of the common law, often recognized by this court, is that a *feme covert* is incapable

of binding herself .by contract. See numerous cases. in our State: Meigs Digest (by Milliken), vol. 3, p. 1633, sec. 1615.

It would seem to follow, inevitably, if her contract for building the house was void, and her promise to pay for it equally a nullity, that no lien could arise from these acts by which her property could be, in any way, affected. Contracts which the party has no power to make, cannot be the basis of legal obligation, nor could legal obligation grow out of such engagements, *ex contractu*. There being no separate estate in the wife, and no special powers by virtue of such an estate in this case, and no fraud alleged or proven, the case stands. alone on the footing of the contract. It is argued: that it is a fraud on the part of the wife to stand. by and see the work being done, after signing a contract, to have it done; but this only amounts to saying, that if a married woman enters into an engagement to pay for work done, and does not pay, it is a fraud, by which either herself or property is bound, and so in *any* case her contract would be executed. If performed by husband and wife, there would be no complaint, if not, the court would enforce, because failure was a fraud. Her contract, when she had property, as in this case, would be effective practically as the contract of a man or a firm sale. But as we have seen, her contracts do not bind as such, as a general rule.

The accurate statement of the law on this question in the case *Calvin* v. *Warren & Moore*, 1 Cold., 358, and repeated approval of the principles stated by this

court in other cases, render it unnecessary to go over it again.

The liability of the land to the lien, would seem to be met by the fact that under our law, she could only dispose of or convey it by conveyance in connection with her husband, and after privy examination before certain officers, as prescribed by our statutes. While a lien is not a right to land, nor an interest in land, as such, but a charge fixed upon it by law or contract, still it would seem an incongruity to hold, that the wife could thus indirectly contract for a result, by which her land might be conveyed or disposed of, against her will, when she could not have done so directly, or except under prescribed forms, which have not been complied with.

Without noticing at present, technical and formal objections urged in argument, it suffices to say, that a supplemental bill was filed alleging that the Marquis Alberti had made a deed of trust, by which he had conveyed his interest. in the land in trust to secure the payment of complainant's debt, which he acknowledged to be $3,500, and the time had probably expired for sale of the land, and asking relief on that footing as well as the mechanic's lien.

Under these bills the case proceeded till January 10th, 1876, when a decree was made ordering a sale of the land, declaring the whole tract subject to the mechanic's lien by virtue of the contract reciting the fact of the mortgage, it is true, but not enforcing it by its terms.

At June term, 1876, the clerk reported he had sold

the tract to complainant, and the report being unexcepted to, as recited, or exceptions being withdrawn, was confirmed.

The title of defendants was divested and vested in the purchaser, subject to redemption, and writ of possession awarded. On the 24th of June, at same term, Consular R. Bass, a brother of Mrs. Alberti, the wife of the Marquis, and Eugenia Bertinatti, the mother of both, presented a petition to the court, accompanied by answer on the part of Bass, asking the court to set aside all decrees affecting their interests, and they be allowed to make defense to the merits. Bass was allowed to file his answer on condition that he pay all costs of the cause, and so his answer stands in the record of the above date.

At January term, 1877, the application of Mrs. Eugenia Bertinatti and her husband was acted on by the chancellor, and they allowed to file an answer, and they, with Consular R. Bass, were adjudged to pay all the costs, "the answer of Bass says, the decree having been filed heretofore upon this order of paying costs."

It is proper to state that Bass was a resident of the State of Mississippi, and the other two parties foreigners, citizens of the Kingdom of Italy. There is no contest that they came in time to make such applications as provided by the Code.

It is now insisted, that the reversal of the decree of the chancellor in this case, would not defeat the title of complainant, the decree below having been already executed and the sale confirmed.

This presents the question directly, whether when the complainant in a case, purchases at a sale ordered by the court, under a decree obtained by himself, and the sale is confirmed, and after this, under the sections of the Code providing for such defense, defendants are permitted to come in and defend, and present a successful defense, by which the right of the former decree is defeated, the complainant purchaser, shall retain the title thus obtained. The same principle would be involved in case of reversal of the decree after such sale and confirmation, by appeal or on writ of error.

It is not denied, that under sections 4371, 4373 and 4377, *et seq.*, the court rightfully exercised the power permitted these parties to come in and defend in this case. But it is insisted, that under sections 4382 and 4283, the title of complainant, under his purchase, is unaffected by this proceeding.

By first section referred to, it is provided substantially, that the decree, taken upon order *pro confesso*, without personal service may be executed, but the court may (which means it ought), to require of complainant to give sufficient security, to abide by each order or decree touching the restitution of property, or repayment of money, upon the defendant subsequently setting aside the decree, and successfully resisting the complainant's suit.

Section 4383 is: "The decree, if executed before it is set aside under any of the foregoing provisions, will be a protection to all persons acting upon its validity and will confer a good title to all property sold under it."

On a fair construction of the spirit and tenor of all these provisions, it could hardly be maintained, that the latter section was intended to apply to the case of a purchase of the property by the complainant himself.    He institutes the proceeding under statutes that provide, that his decree is a defeasible one.    The requirements of section 4382, indicate clearly that he may be required to make restitution of property obtained under the decree, or repay money received in pursuance of it, and shall give security for the performance of decrees ordering this.    The language of the next section will be a protection to all persons acting upon its validity, and will confer a good title to all property sold under it," would seem to use unnecessary words of qualification, if intended to apply to the complainant.    Why not say, to all or any one, whether complainant or otherwise, acting under the decree?    Taken in connection with the previous section, it fairly means it will protect all other persons acting on the assumption of its validity, and will confer a good title to all property sold to such persons; but complainant is bound to make restitution of all property received, or repay any money, and shall give security that he will do so in the event the decree is set aside by a defendant, and recovery of complainant successfully insisted.    This makes the two sections homogeneous, and removes all incongruity in their provisions.

This is in accord with the general principle often recognized by this court, and well sustained in reason and by authority.    In *Waite* v. *Dolby*, 8 Hum., 409,

this court says: "But if the party who sues out void-able process becomes the purchaser of property levied and sold by virtue of such process, he acquires no title by such purchase," while the officer making the sale might well justify under it. The plaintiff acted as a wrongdoer in suing it out.

And so in the case of *Wilson & Wheeler* v. *Nance & Collins*, 11 Hum., 192, the reasons for the rule are thus given, why "a purchase by the plaintiff in the judgment, who has caused the irregular process to issue,. will not avail him. "He is presumed to know, and bound at his peril to know, not only that the tribu-nal had jurisdiction of the cause, but likewise that the proceedings were regular and in legal form, at least so far as all matters of substance. But not so as to strangers, they are only bound to know that the tribu-nal had competent jurisdiction."

While these are cases of sale under voidable pro-cess, and not pricisely the case now in hand, they·are cited to show, that a difference has always been rec-ognized in our law, between a party plaintiff who pur-chases under judicial proceeding, and a stranger so purchasing, as to the rights and equities attaching to·them.

This question of the effect of. "reversed judgments," is discussed with ability by Mr. Freeman, in his work on Judgments, and authorities reviewed. The rule as stated by him is "the reversal of the judgment by any competent authority, restores the parties litigant to the same condition in which they were prior to its rendition. Upon the reversal of the judgment against

him, the appellant is entitled to restitution from the respondent of all the advantages acquired by the latter by virtue of the erroneous judgment. The successful appellant is entitled to a restitution of everything still in possession of his adversary in specie—*not* the *value*, but the *thing": Secs. 481, 482.

The author cites an opinion by Mr. Justice Field, of the Supreme Court of the United States, sitting in Circuit Court, holding a different rule, in *South Fork Canal Company* v. *Gordon*, 2 Abbt. U. S., 479, but says, it is contrary to the weight of authority, and so recognized by the same learned Judge in Supreme Court of the United States afterwards in *Galpin* v. *Page*, 1873.

The above conclusion, after an elaborate examination of the authorities by Mr. Freeman, we think states the correct rule on the subject, and the statutes cited, we think are, when properly construed, in accord with this view. The plaintiff who buys under such a proceeding, is party to the case, and knows he may have his proceeding contested, set aside, and annulled. He is in condition to maintain his right as party to the record, and should be required to take the consequences of the result of his own suit, and not permitted to reap any advantage from a wrongful disposition of the property, caused by his own action. The result is, the decrees interpose no defense, so far as the title of the complainant purchaser is concerned.

It being conceded, that whatever interest the Marquis Alberti had in this land, was properly decreed to be subject to the liens claimed, the only remaining

question is whether the chancellor properly ascertained the amount of this interest.. The only interest he had was under the devise of his wife, Ella, who died in 1871.

The deed, or what purports to be one executed by the mother in 1868, was inoperative to convey the land or any interest therein, not having been executed as required by our law.

We do not deem it necessary to discuss at any length these questions. The result is, the chancellor's decree is reversed, except as to the said interest of the Marquis Alberti. The complainant will pay the costs of this court—costs of court below, as to the other defendants, except the Marquis, will be also paid by complainant, except as already ordered by the chancellor on filing answers.